# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **CRIMINAL NO.** |
| | : | |
| ANDY STEVEN OLIVA-LOPEZ, | : | |
| | : | **18 U.S.C. § 111(a)(1)** |
| Defendant. | : | **(Assaulting, Resisting, or Impeding** |
| | : | **Certain Officers)** |
| | : | |
| | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, **ANDY STEVEN OLIVA-LOPEZ,** with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP).  Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting

in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020.  The joint session began at approximately 1:00 P.M.. Shortly thereafter, by approximately 1:30 P.M., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 P.M., certain individuals in the crowd forced their way through, up, and over the barricades.  Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured.  Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 P.M., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.  The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 P.M., members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers.  Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 P.M. on January 6, 2021.  In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured.  The proceedings resumed at approximately 8:00 P.M. after the building had been secured.  Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *ANDY STEVEN OLIVA-LOPEZ's Participation in the January 6, 2021, Capitol Riot*

8.     ANDY STEVEN OLIVA-LOPEZ (the defendant) lives in Milwaukee, Oregon.  On January 3, 2021, defendant traveled from Milwaukee, Oregon to Washington, D.C., by car with a friend.  The purpose of the defendant's trip to Washington, D.C., was to attend the "Stop The Steal" rally.

9.     On January 6, after attending the rally, ANDY STEVEN OLIVA-LOPEZ walked with the crowd to the Capitol.

10.     ANDY STEVEN OLIVA-LOPEZ made his way to the West Plaza, which was, by that time overrun with rioters.  At that location, United States Capitol Police (USCP) and Metropolitan Police Department (MPD) officers were trying to maintain lines of defense and were struggling to prevent rioters from advancing further to the Capitol building itself.

11.     Beginning at approximately 2:04 P.M., at a location on the West Plaza, ANDY STEVEN OLIVA-LOPEZ sprayed streams of orange-colored, UDAP brand bear spray at the faces and heads of police officers.  Over the course of several minutes, he did this on three distinct occasions.  The targeted officers included MPD Officers I.A., J.C., and E.G.-B., among others.

12.     As a result of being sprayed, Officer I.A. experienced a burning sensation in his eyes which made it impossible to see.  He describes the intensity of this sensation as a 9 out of a possible 10.  He had to leave the line of service for a period of approximately 2-3 hours and suffered lingering effects for 2-3 days thereafter.   Officer (now Sergeant) J.C. similarly experienced an immediate burning sensation (an 8 out of 10 on a pain scale), the inability to see, and difficulty breathing.  He had to leave the line of service to go to an eye wash station inside the Capitol building.  Both officers report that the orange spray went under their face shields and contacted their faces directly.

13.     Shortly after 2:00 P.M., some people in the crowd forced their way through, up, and over the barricades and past police officers.  The crowd advanced to the exterior façade of the Capitol building, where it was not lawfully authorized be.   At such time, the certification proceedings were still underway, and the exterior doors and windows of the United States Capitol were locked or otherwise secured.  Along with other members of the crowd, ANDY STEVEN OLIVA-LOPEZ climbed up the stone balustrade of a set of stairs, adjacent to the temporary scaffolding erected for the Inauguration.  This scaffolding was located well inside the restricted perimeter of the Capitol building and its grounds, and it was in an area that was not open to the public.

### *Elements of the Offense*

14.     The parties agree that Assaulting, Resisting, or Impeding Certain Officers, a violation of Title 18 U.S.C. § 111(a)(1) requires the following elements:

> First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with officers of the Metropolitan Police Department;

> Second, the defendant did such acts forcibly;

> Third, the defendant did such acts voluntarily and intentionally;

> Fourth, the persons assaulted, resisted, opposed, impeded, intimidated, or interfered with were officers of the United States who were then engaged in the performance of their official duties or were assisting officers of the United States who were then engaged in the performance of their official duties; and

> Fifth, the defendant made physical contact with persons who were officers of the United States who were then engaged in the performance of their official duties or were assisting officers of the United States who were then engaged in the performance of their official duties, or who acted with the intent to commit another felony.  For purposes of this element, "another felony" refers to Civil Disorder, a violation of 18 U.S.C. § 231.

### *Defendant's Acknowledgments*

15.     ANDY STEVEN OLIVA-LOPEZ knowingly and voluntarily admits to all the elements of 18 U.S.C. § 111(a)(1) as set forth above.  Specifically, the defendant admits that, while on the West Plaza of the United States Capitol, he deployed streams of bear spray at the faces and heads of MPD Officers who were assisting the United States Capitol Police.  The defendant further admits that, when he engaged in the conduct described in paragraphs 11-12, he knew that the officers were engaged in the performance of their official duties; and that he assaulted, resisted,

opposed, impeded, intimidated, or interfered with the officers on account of their performance of their official duties.  Finally, the defendant admits that he made indirect physical contact with these officers and/or intended to commit another felony.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/  *David J. Perri*_____
David J. Perri
Assistant United States Attorney
WV Bar No. 9219

## DEFENDANT'S ACKNOWLEDGMENT

I, **ANDY STEVEN OLIVA-LOPEZ,** have read this Statement of the Offense and have discussed it with my attorney, Peyton Lee.  I fully understand this Statement of the Offense.  I agree and acknowledge by my signature that this Statement of the Offense is true and accurate.  I do this voluntarily and of my own free will.  No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 7/24/2024

**ANDY STEVEN OLIVA-LOPEZ**
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully.  I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 7/24/2024

Peyton Lee
Attorney for Defendant